[Cite as *In re J.R.*, 2016-Ohio-2703.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| IN THE MATTER OF: | : | Hon. W. Scott Gwin, P.J. |
| J.R., MINOR CHILD | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| | : | |
| | : | |
| | : | Case No. 2016CA00018 |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of
                             Common Pleas, Juvenile Division, Case
                             No. 2014JCV00496

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      April 25, 2016

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

BRANDON J. WALTENBAUGH                    MANDY REBECCA deLEEUW
SCDJFS                                    Stark County Public Defender
300 Market Ave. North                     201 Cleveland Ave. S.W., Ste. 104
Canton, OH  44702                         Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant T.R. appeals from the December 28, 2015 judgment entry of the Stark County Court of Common Pleas, Juvenile Court Division, terminating her parental rights and granting permanent custody of J.R. to the Stark County Department of Job and Family Services ("SCDJFS").

*Facts & Procedural History*

{¶2} T.R. ("Mother") is the mother of J.R., born May 22, 2014. On May 23, 2014, SCDJFS filed a complaint of neglect and dependency with regards to J.R. The complaint alleged, in part, that Mother lost custody of her two previous children due to abuse of cocaine, ecstasy, and marijuana.

{¶3} On May 27, 2014, an emergency shelter care hearing was held. The trial court found probable cause for the involvement of SCDJFS. The trial court further found SCDJFS had made reasonable efforts to prevent the need for removal of the child from the home. The trial court also awarded emergency temporary custody of the child to SCDJFS and reaffirmed pre-adjudicatory orders for Mother to complete a parenting evaluation, drug assessment, drug screening, and follow all resulting recommendations.

{¶4} On August 14, 2014, the trial court found J.R. to be dependent and placed her into the temporary custody of SCDJFS. The trial court also deleted the allegation of neglect. The trial court approved and adopted the case plan and found SCDJFS had made reasonable efforts to prevent the need for the continued removal of the child from the home.

{¶5} The trial court reviewed the case on November 13, 2014 and approved and adopted the case plan review packet. The trial court further found compelling reasons

existed to preclude filing for permanent custody, found SCDJFS had made reasonable efforts to finalize the permanency planning in effect, and maintained the status quo.

{¶6} SCDJFS filed a motion to extend temporary custody of J.R. on March 25, 2015. On April 16, 2015, the trial court reviewed the case. The trial court approved and adopted the case plan review packet, found compelling reasons existed to preclude filing for permanent custody, found SCDJFS had made reasonable efforts to finalize the permanency planning in effect, and maintained the status quo. The trial court also granted SCDJFS' motion to extend the temporary custody of J.R. to SCDJFS for six months.

{¶7} The trial court again reviewed the case on October 13, 2015. The trial court approved and adopted the case plan review packet, found SCDJFS had made reasonable efforts to finalize the permanency planning in effect, and maintained the status quo. The trial court found no compelling reasons existed to preclude filing for permanent custody. Thus, on October 22, 2015, SCDJFS filed a motion seeking permanent custody of J.R. On December 18, 2015, Mother filed a motion to extend temporary custody for six months to work on her case plan.

{¶8} The trial court conducted a trial on SCDJFS' motion for permanent custody and Mother's motion to extend temporary custody on December 22, 2015.

{¶9} At the trial, Dr. Aimee Thomas ("Thomas"), a psychologist with Northeast Behavioral Health, testified she conducted a parenting evaluation of Mother. The concerns Thomas had with Mother included: Mother previously lost custody of two children, Mother's domestically violent relationship with Mr. Gabe, Mother's boyfriend ("Gabe"), and Mother's failure to act as a responsible and independent adult because she

is dependent on romantic partners to meet her basic needs. Thomas diagnosed Mother with dependent personality disorder, opiate abuse disorder, and cannabis abuse disorder. Thomas testified an individual with dependent personality disorder moves from one problematic romantic partner to another.

{¶10} Thomas made multiple recommendations for Mother, including: Goodwill Parenting, continue treatment at Quest, random urine screens, participate in twelve-step meetings, counseling at Renew or another agency to address concerns with her tolerance for problematic romantic partners, secure employment, and joint counseling with Mr. Gabe. Thomas stated joint counseling with Mr. Gabe was still appropriate even if he and Mother are no longer in a relationship because they have a child together. Thomas also completed a parenting evaluation of Mr. Gabe and had concerns with his anger management and narcissistic personality.

{¶11} Kelli Williams, ("Williams"), is the ongoing caseworker from SCDJFS in the instant case. Williams testified the initial concerns to prompt agency involvement with Mother were: Mother using drugs, domestic violence with her boyfriend, and losing custody of her two children in New Jersey. Williams stated J.R. has continuously been in agency custody since October 14, 2014.

{¶12} Mother completed a Quest assessment and was re-assessed in December of 2015. In December of 2015, Quest did not recommend further treatment for Mother, but Williams believes this is due to their reliance on Mother's self-reporting. Williams does not believe Mother has satisfied the prong of her case plan as it relates to drug issues because Mother used drugs on and off during the case, and has tested positive for marijuana, cocaine, and opiates. Mother has not always complied with random drug

screens. Williams testified Mother's drug abuse issues were not resolved by treatment because Mother continued to test positive for drugs during her treatment at Quest.

{¶13} Mother completed parenting classes at Goodwill Parenting. However, Williams testified she completed the class "with concerns." Mother received the lowest-level certificate, the attendance certificate. Mother was on two behavioral contracts during the parenting class, one for consistent positive drugs screens for marijuana and one for excessive unexcused absences. Further, Mother had several angry outbursts with staff and had to be pulled out of class. Two goals Mother did not achieve during the class related to substance abuse and anger management. Williams was concerned about Mother's issues with the parenting class.

{¶14} The case plan provided Mother should attend individual counseling to address domestic violence and dependent personality disorder. Williams testified Mother did not successfully complete this portion of her case plan. Williams further stated Mother did not complete a twelve-step program as recommended by Thomas and incorporated into the case plan.

{¶15} Mother did not have employment throughout the case and obtained a job several weeks before the hearing. Mother did not obtain independent housing and has never lived on her own. Mother told Williams she is not living with Gabe since a domestic violence incident in August of 2015. However, Williams does not believe Mother was being truthful because Mother and Gabe left together in the same vehicle from the SCDJFS building two weeks prior to the hearing. Williams testified Mother and Gabe have broken up dozens of times in the last eighteen months and have an extremely volatile relationship. Both Gabe and Mother admitted to Williams that they fight on a daily

basis. Williams stated there have been repeated calls to the police from their home and, when Williams reviewed the police reports, the police were called over fifteen times in a nine to ten month period. The police charged both Mother and Gabe with disorderly house because of the repeated phone calls. Williams testified this situation is not a safe environment for J.R.

{¶16} Williams stated she has made reasonable efforts to assist Mother and has offered her numerous services. Williams told Mother she would help her get into a shelter and would help her with counseling. Williams transported Mother to Quest several times. Williams rearranged the visitation schedule so Mother could meet her community service hours and tried to adjust the schedule so Mother could submit urine screens. Williams attempted to make home visits to Mother, but was unable to do so. Williams testified there are compelling reasons to grant permanent custody of J.R. to SCDJFS.

{¶17} On cross-examination, Williams stated Mother did complete the parenting assessment, Quest assessment, and eventually went to outpatient treatment. However, Mother has not always cooperated with urine screens. Williams has not seen where Mother is living now because Mother gave her two different addresses and Mother told Williams she is living with a friend and Williams is not welcome there. While Williams talked to Mother about housing alternatives and agencies to assist her, Mother told Williams she was not pursuing independent housing because she wanted to make things work with Gabe and he would pay the rent.

{¶18} Williams does not believe an extension of six months to show Mother can gain independent housing would change her opinion because there are other issues with Mother, such as the lack of bonding with J.R. Mother did attend court-ordered counseling

at Free Space, but this is not individual counseling and Mother was going to fulfill court-ordered counseling in a criminal case, not on her own initiative.

{¶19} Williams also testified to best interest. Williams stated J.R. is healthy and developmentally on track. J.R. is placed with her younger sibling. J.R. is extremely attached to her foster family and has been there since the beginning of the case. J.R. knows no other home.

{¶20} Williams testified the visits between Mother and J.R. were "alarming to her." When J.R. was a baby, Mother did not have good attendance at visitation, so J.R. did not recognize her. When J.R. was nine months old, she had trouble separating from her caregiver and screamed, yelled, and cried during the visits. Williams stated the visits were traumatizing J.R. Williams testified Mother does not engage with J.R. well and does not interact with J.R. Instead, Mother talks to Williams or the other aide during the visits and would also be on her phone or frequently go to the bathroom. Williams stated the visits are very hard on J.R. Williams has concerns there is a legitimate bond between Mother and J.R. Williams testified it is in the best interest of J.R. for the trial court to grant permanent custody to SCDJFS.

{¶21} On cross-examination, Williams testified she tried multiple and various times for visitation. Williams scheduled visits at Mother's requested dates and times, but had to move them a bit earlier to accommodate J.R.'s naptime. Williams stated the fact that the visits were around J.R.'s naptime does not explain J.R.'s behavior at the visits. Williams testified a six-month extension would extend visits that are traumatizing to the child.

{¶22} Mother testified during the best interest portion of the hearing. She stated J.R. plays with her during visitation and Mother loves J.R. very much. Mother stated a six-month extension would be in J.R.'s best interest. Mother testified she wants to take J.R. to New Jersey to be with the rest of her family.

{¶23} Also entered into evidence was the report Randall Bray ("Bray"), appointed as guardian ad litem for J.R. Despite Bray's efforts, he was unable to make contact with Mother. Bray stated J.R. is in excellent physical health and is a happy, intelligent child. J.R. is bonded to her caregiver. Bray further stated Mother continues to struggle with narcotic use, has problems completing the case plan, and J.R. has problems when Mother visits as J.R. cries and hides under the table. Bray concluded it is in the best interest of J.R. for permanent custody to be granted to SCDJFS.

{¶24} On December 28, 2015, the trial court issued a judgment entry with findings of fact and conclusions of law. The trial court found J.R. is a dependent child as defined by R.C. 2151.04. Further, J.R. had been in the temporary custody of SCDJFS for twelve or more months during a consecutive twenty-two month period. The trial court found J.R. cannot be placed with either parent within a reasonable period of time and that, despite reasonable case planning and diligent efforts by SCDJFS, Mother failed to remedy the conditions that caused J.R. to be taken into the custody of SCDJFS. The trial court additionally found it was in J.R.'s best interest to grant permanent custody to SCDJFS.

{¶25} The trial court denied Mother's motion for six-month extension, granted permanent custody of J.R. to SCDJFS, and terminated Mother's parental rights.

{¶26} Mother appeals the December 28, 2015 judgment entry of the Stark County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶27} "I. THE TRIAL COURT'S JUDGMENT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶28} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO EXTEND TEMPORARY CUSTODY FOR SIX (6) MONTHS.

{¶29} "III. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Permanent Custody*

{¶30} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶31} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶32}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

**{¶33}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

**{¶34}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶35}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court

will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

*Reasonable Time*

**{¶36}** Mother argues the trial court's determination that the childr could not be placed with her within a reasonable time is against the manifest weight and sufficiency of the evidence. Mother contends she has housing and employment and is actively engaged in case plan services.

**{¶37}** We first note the trial court determined, pursuant to R.C. 2151.414(B)(1)(d), that J.R. had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months.

**{¶38}** As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni,* 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. Though Mother argues the trial court erred in finding SCDJFS had temporary custody of J.R. for at least twelve months of a consecutive twenty-two month period, we found *infra*, that the trial court did not err in this determination. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

**{¶39}** However, even if we consider Mother's argument with regards to J.R., we find the trial court did not err in determining the child cannot be placed with Mother at this time or within a reasonable period of time.

{¶40} Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. The relevant portions of R.C. 2151.414(E) are as follows:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. * * *

{¶41} A review of the record supports the trial court's conclusion that J.R. cannot be placed with Mother within a reasonable time. Williams testified Mother has not satisfied the prong of her case plan as it relates to substance abuse issues. Thomas diagnosed Mother with opiate abuse disorder and cannabis abuse disorder. To address this issue, Mother was drug screened and recommended to participate in drug treatment. However, Williams testified Mother has been positive for marijuana, cocaine, and opiates during the pendency of the case. Williams stated Mother has not always complied with

the drug screens. Williams believes Mother still has issues with drug abuse that have not been resolved by Mother's completion of drug treatment since she continued to test positive for drugs during her treatment at Quest.

{¶42} At the outset of the case, Williams was concerned with Mother's parenting ability. Thus, as part of the case plan, Mother was recommended to complete parenting classes. Though Mother did eventually complete the parenting class with the lowest level of completion, Williams testified she completed the class "with concerns." Mother was placed on two behavioral contracts during the class for actively smoking marijuana during the class and excessive unexcused absences. Mother also had several angry outbursts with the staff and had to be pulled out of class.

{¶43} J.R. was originally placed outside the home because of Mother's tolerance of domestically violent relationships. Thomas diagnosed Mother with dependent personality disorder. Thomas recommended Mother participate in counseling focused on tolerance of problematic romantic partners and completion of twelve step meetings. Williams testified Mother did not complete individual counseling and did not complete the twelve-step meetings. Although Mother told Williams she was separated from Gabe at the time of the hearing, Williams does not think this is truthful because Mother and Gabe left together in the same vehicle from a SCJDFS building two weeks prior to the hearing. Williams stated Mother and Gabe have broken up and gotten back together countless times during the eighteen months she has been involved with the family. Mother made statements to Williams characterizing her relationship with Gabe as "extremely volatile" and admitted to fighting with him on a daily basis. Williams testified the situation is not a safe environment for J.R.

{¶44} Though Mother contends J.R. can be placed with her in a reasonable time because she is now employed and has stable housing, Williams testified otherwise. Williams has not seen where Mother lives because Mother gave her two different addresses and because Mother told Williams she is living with a friend and Williams is not welcome there. Mother had not been employed throughout the case, and obtained a job several weeks prior to the hearing. Further, when Williams was asked whether she thought an extension of temporary custody for Mother to show independent housing and continued employment would impact her recommendation, Williams testified it would not matter because there are other issues with Mother, including the lack of bonding with J.R.

{¶45} Temporary custody was extended once in the instant case by motion of SCDJFS and Mother still failed to take prompt action to address her issues and failed to successfully and fully complete her case plan.

{¶46} We find there is competent, credible evidence to support the trial court's finding that J.R. cannot be placed with Mother within a reasonable amount of time because the delay in completing the case plan objectives and the failure of Mother to reduce the risks posed when the child was first removed are directly attributable to the actions and inactions of Mother.

*Temporary Custody for Twelve Months of a Consecutive*

*Twenty-Two Month Period*

{¶47} Mother argues the trial court erred in finding SCDJFS had temporary custody of J.R. for at least twelve (12) months of a consecutive twenty-two (22) month period.

{¶48} R.C. 2151.414(B)(1) states in pertinent part:

Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

* * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve months of a consecutive twenty-two month period * * *.

{¶49} Essentially, Mother contends J.R. could not have been in the custody of SCJFS for twelve out of twenty-two consecutive months because a twenty-two month period had not yet elapsed between the onset of the case and filing of the motion for permanent custody.   This Court has previously rejected this argument and held, "[w]e find the agency was not required to wait until twenty-two months had passed before filing its motion for permanent custody." *In re: Vann Children*, 5th Dist. Stark No. 2005-CA-00127, 2005-Ohio-4398.  We reasoned as follows:

In the case of *In re: C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, the Supreme Court found the statute is intended to give parents twelve full months to work on reunification before an agency can file for permanent custody.  Parents have a basic civil right to raise their children, and must be afforded every procedural and substantive protection the law allows, *Id.*, citations deleted.  Thus, an agency can file for permanent

custody any time after the child has been in the agency's continuous custody for at least twelve months, but may not file its motion until after at least twelve months have passed.

*Id;* see also*, In re T.B.*, 9th Dist. Summit No. 21124, 2002-Ohio-5036 (stating "there is nothing in the plain language of the statute that requires a public agency to wait until a child has been in its custody for twenty-two months before filing a motion for permanent custody); *In re I.D.*, 7th Dist. Columbiana No. 09 CO 13, 2009-Ohio-6805 (holding the twenty-two consecutive month requirement in the "12 of 22" provision does not prevent a court from granting permanent custody of a child under twenty-two months of age who has been in the permanent custody of the agency for at least twelve months).

**{¶50}** In the instant case, Williams testified J.R. was ordered into the temporary custody of SCDJFS on August 14, 2014 and J.R. has been continuously in agency custody since October 14, 2014. SCDJFS filed their motion for permanent custody on October 22, 2015. Accordingly, J.R. was in the custody for SCDJFS for over twelve consecutive months and the trial court did not err in finding the second prong of the two-part test set forth in R.C. 2151.414(B)(1) is met.

*Reasonable Efforts*

**{¶51}** Mother next contends the trial court erred when it found SCDJFS made reasonable efforts to prevent the removal of J.R. from the home and to make it possible for the child to return pursuant to R.C. 2151.419. We disagree.

**{¶52}** R.C. 2151.419 does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413 and R.C. 2151.414. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. Therefore, the trial court was not required to make

a specific finding that SCDJFS had made reasonable efforts to reunify the family. *Id.* However, in *In re C.F.*, the Ohio Supreme Court also stated this does not mean the agency is relieved of the duty to make reasonable efforts and provides, in pertinent part:

> At various stages of the child-custody proceeding, the agency may be required under other statutes to prove that it has made reasonable efforts toward family reunification. To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanent custody hearing, the court must examine the reasonable case planning and diligent efforts by the agency to assist the parents when considering whether the child cannot and should not be placed with the parent within a reasonable time.

*Id.*

{¶53} The Ohio Supreme Court has held a trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established reasonable efforts have been made prior to that hearing. *Id.* The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *Id.*

{¶54} In this case, the trial court found SCDJFS utilized reasonable efforts to reunify the family at review hearings on August 14, 2014, November 13, 2014, April 16, 2015, and October 13, 2015; all before SCJDFS filed its motion for permanent custody. Mother did not object to any of these findings. Therefore, the showing of reasonable

efforts was not required to be proven by the state or found by the Court during the permanent custody hearing. *In re J.J.F.*, 5th Dist. Stark No. 2009-CA-00133, 2009-Ohio-4736.

**{¶55}** Further, even if SCDJFS did have a duty to show reasonable efforts at the permanent custody hearing, we find the evidence established SCDJFS did provide services designed to alleviate the problem that led to the child's removal and did make diligent efforts to assist Mother in remedying the problem. Williams testified the agency made reasonable efforts to assist Mother and offered numerous services. Mother was recommended to participate in drug treatment, domestic violence counseling, and parenting classes. Williams told Mother she would help her get into a shelter, would with help with counseling, and transported Mother to Quest several times. Williams rearranged visitation schedules with the child so Mother could meet her community service requirement for her criminal case. Williams tried to adjust the schedule so Mother could submit urine screens. Williams attempted to make home visits to offer Mother help and communicate in-person with Mother. Williams testified she "didn't know what more anybody can (sic) do."

**{¶56}** Mother's first assignment of error is overruled.

II.

**{¶57}** In Mother's second assignment of error, she argues the trial court erred in denying her motion to extend temporary custody for six months. We disagree.

**{¶58}** A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. R.C. 2151.415(D)(1) and (2). Pursuant to R.C. 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and

convincing evidence, (1) that such extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe the child will be reunified with a parent or otherwise permanently placed within the period of extension. *In re McNab*, 5th Dist. Tuscarawas Nos. 2007 AP 11, 0074, 2007 AP 11, 0075, 2008-Ohio-1638.

{¶59} Mother contends she made significant progress on her case plan and could show her housing and employment were stable in six months. While Mother completed drug treatment at Quest, Williams testified she did not satisfy the sobriety portion of the case plan as she continued to fail to submit urine screens and/or tested positive throughout the case, including while she was in drug treatment. Further, though Mother attended parenting classes at Goodwill, she received the lowest level of certificate and was on two behavioral contracts during the class. Mother did not complete the portion of her case plan with regards to individual counseling, twelve step meetings, and independent housing.

{¶60} It was only in the weeks before the permanent custody hearing that Mother obtained employment, despite a previous six-month extension of temporary custody. When asked whether she thought a six-month extension would alter her opinion, Williams testified she does not believe an extension to show independent housing and stable employment would matter because there are other issues with Mother such as drug use and lack of bonding with the child. Williams stated an extension is not in the best interest of the child because it would be extending visitation that is traumatizing to the child. Williams has worked with Mother for eighteen or nineteen months and still testified it was in the best interest of J.R. to be placed in the permeant custody of SCDJFS.

**{¶61}** We find, upon review of the record, the evidence supports the conclusion an extension of temporary custody was not in J.R.'s best interests, but instead is best served by the award of permanent custody to SCDJFS. Appellant's second assignment of error is overruled.

III.

**{¶62}** In her final assignment of error, Mother argues the trial court erred in finding an award of permanent custody was in J.R.'s best interest.

**{¶63}** We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

**{¶64}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child and (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody. No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.

**{¶65}** A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. The willingness of a relative to care for the child does not alter what a court considers in determining permanent custody. *In re Patterson,* 134 Ohio App.3d 119, 730 N.E.2d 439 (9th Dist. 1999); *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

**{¶66}** The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. *In re Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.* at 111.

**{¶67}** The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist. 1994).

**{¶68}** We find the trial court did not err in finding that granting permanent custody to SCDJFS was in the best interest of J.R. Williams testified Mother had not satisfied her case plan as she failed to comply with drug screens, tested positive for marijuana,

cocaine, and opiates throughout the case, still has issues with drug abuse, failed to attend individual counseling, failed to attend a twelve-step program, and failed to obtain independent housing.

{¶69} Further, Williams testified the visits between Mother and J.R. were bad and were alarming to Williams. When J.R. was a baby, Mother did not have good attendance at visits, so J.R. did not recognize her. When J.R. was nine months old, she had trouble separating from her caregiver and during visits with Mother screamed, yelled, and cried. Williams stated the visits are traumatizing to the child. Williams testified Mother does not engage with the child well, does not interact with the child, and talks to Williams or the other aide during the visitation time. Williams testified she has tried various times and days for visitation, but that did not change the poor visitation with the child. Williams questioned whether J.R. has a legitimate bond with Mother.

{¶70} Williams stated J.R. is healthy and developmentally on track. J.R. is placed with her younger sibling and has been in the same foster care home since the beginning of the case. Williams testified J.R. is extremely attached to her foster family and knows no other home. Williams stated J.R. would suffer no harm if Mother's parental rights were terminated and that J.R. would benefit from adoption. Bray concluded in his report it is in the best interest of J.R. for SCDJFS to be granted permanent custody.

{¶71} We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to SCDJFS is in the best interest of J.R. is supported by competent and credible evidence. Mother's third assignment of error is overruled.

{¶72}   Based on the foregoing, we find the trial court did not abuse its discretion in granting permanent custody of J.R. to SCDJFS.   Mother's assignments of error are overruled and the December 28, 2015 judgment entry of the Stark County Common Pleas Court, Juvenile Court Division, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur