[Cite as *In re I.K.*, 2018-Ohio-3644.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: I.K. | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 18-COA-004 |
|  | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Ashland County Court of
Common Pleas, Juvenile Division, Case
No. 20173045

JUDGMENT:     September 10, 2018

DATE OF JUDGMENT ENTRY:

APPEARANCES:

For: Ashland County JFS
CHRISTOPHER R. TUNNELL
Ashland County Prosecutor
110 Cottage Street, Third Floor
Ashland, OH 44805

JOSHUA T. ASPIN
Assistant Prosecutor
110 Cottage Street, Third Floor
Ashland, OH  44805

For: Appellant
ROBERT GOLDBERGER
10 W. Newlon Place
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Appellant-mother appeals the December 29, 2017 Judgment Entry of the Ashland County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her minor child, I.K. (b. May 1, 2008) and granted permanent custody of the child to appellee, Ashland County Department of Jobs and Family Services (hereinafter "ACJFS").

*Facts and Procedural History*

{¶2} On April 4, 2016, I.K. was removed from his parent's home. A shelter care hearing was held in Ashland County Common Pleas Court, Juvenile Division, and I.K. was placed in the temporary custody of ACJFS.

{¶3} On April 5, 2016, ACJFS filed a Complaint alleging I.K. to be an abused and dependent child. The Complaint sought temporary custody of I.K. be granted to ACJFS. On April 6, 2016 Appellant, entered an admission to the Complaint.

{¶4} By Judgment Entry filed April 13, 2016, the Court found I.K. to be an abused and dependent child with respect to Appellant. On July 6, 2016, the Court conducted a disposition hearing. By Judgment Entry filed July 19, 2016, the Court found it in the best interest of I.K. to be placed in the temporary custody of ACJFS.

{¶5} On June 8, 2017, ACJFS filed a motion seeking Permanent Custody of I.K. Hearings were held on August 30, 2017 and September 18, 2017.

**The Permanent Custody Trial.**

{¶6} H.K. and her sibling I.K. were removed from their parent's home due to allegations the father, E.K., physically abused I.K.[1] The father was subsequently convicted

---

[1] Appellant has filed a separate appeal with respect to the minor H.K. *See, In re I.K.*, 5th Dist. Ashland No. 18-COA-003.

of Endangering Children, a felony of the third degree and Domestic Violence, a felony of the fourth degree. He was sentenced to thirty-six months in prison with an expected release date of March 18, 2019. Appellant was convicted of Complicity (Endangering Children), a felony of the third degree. She was sentenced to 180 days jail-time followed by six months in a halfway house and four years of probation. As a condition of her felony probation Appellant is not allowed contact with her children I.K. and H.K.

{¶7} On October 3, 2016, an Amended Case Plan was filed with the Court. The Amended Case Plan removed both of I.K.'s parents from the Case Plan as both were incarcerated at the time. On February 6, 2017, an Amended Case Plan was filed with the Court that added Appellant as a participant for Case Plan services on the basis that she had been released from incarceration.

{¶8} Upon her release from the halfway house, Appellant took up residence with K. C. Appellant was living at a trailer house with K.C., his mother and a grandson. At that time, there were concerns of recent drug use in that residence and a recent drug investigation by the Sherriff s Office recovered drug paraphernalia from K.C.'s bedroom. On June 20, 2017, K.C. was administered a drug screen at the jail following his arrest. He tested positive for amphetamine, methamphetamine, THC, and cocaine. In July 2017, Appellant voiced her intention to move from K.C.'s trailer within a month. However, as of the August 30, 2017 hearing Appellant was continuing to reside at that residence.

{¶9} Prior to the August 30, 2017 hearing additional allegations surfaced regarding the father sexually abusing H.K. When questioned by the caseworker Appellant stated that she did not believe that her children had been sexually abused. Appellant

gave a lengthy recorded interview to Detective Kim Mager. There is no evidence that Appellant was involved with any sexual abuse of H.K. However, during the interview Appellant did admit to observing odd circumstances over the years between H.K. and her Father. Appellant walked in on H.K. and her Father naked under the covers on several occasions. Appellant would remove H.K. from the room and confront Father. Appellant did not report the incidents because she was afraid the Father would hurt her or the children.

{¶10} The evidence established that Appellant completed parent education. The evidence further established that Appellant participated regularly in mental health services at Appleseed Community Mental Health Center, that she attended regularly, and that the services were designed to address the identified issues. The evidence further indicated, however, that little to no progress was made. Specifically, although her participation was acknowledged, i.e., that she attended the sessions, she was never able to articulate or demonstrate that she could interpret and understand what was being presented. No one had ever observed her actually parenting the children because she was not permitted to have contact with the children pursuant to the terms of her probation. When asked what she would do in a domestic violence situation, her only response was that she just would not be in such a relationship.

{¶11} The evidence established that Appellant was deceptive with the ACJFS caseworker about her living arrangements. The caseworker began looking for Appellant in order to have regular contact with her sometime around April 2017, and Appellant did not report that she was residing with K.C. She did say she was living with a friend, but did not provide a name. Ultimately, at a home visit in July 2017, Appellant acknowledged

K. C. was her boyfriend and resided in the home. Also residing in the home was B.C., K. C.'s mother, and a grandson. The caseworker was able to observe the home and described it as an older trailer that was cluttered, dirty and ridden with fleas. There was insufficient space for children and too many people were residing in the home for it to be appropriate as a placement for the children.

{¶12} I.K. has been identified as having a disability. He has suffered great trauma, including as a victim of physical abuse. He exhibits violent behaviors. Any change in routine is very upsetting to him. He defecates, urinates, and smears feces. While he can recognize his bad behaviors, he will not stop himself from engaging in those behaviors. He repeated the first grade and was considered to be held back yet again but was not, based largely on his age. He has a special education teacher. He struggles in all areas of his life, including at school. He has an IEP that provides for one-on-one instruction. He has a special education teacher. His progress has been extremely slow. Initially, the foster mother had to go to the school with him each day and remain for the entire school day. He has made minimal progress in counseling. He needs ongoing therapy and continued assistance with managing his behaviors.

{¶13} Counselor's testified that I.K. initially provided little information and his diagnosis with Adjustment Disorder and later Post Traumatic Stress Disorder was added. He has a mild intellectual disability. His IQ falls within such a range. PTSD resulted in numerous symptoms that he exhibits on a regular basis. He has a low ability to process information. He is very concrete and present oriented. He has a short attention span. He needs boundaries set. He can be aggressive. He does not have social boundaries. He can get very anxious, resulting in inappropriate behaviors such as eating non-food

items, defecating and urinating. He has a treatment plan pursuant to which he is attempting to learn to relate to other people, be proactive regarding boundaries, and be able to verbalize his thoughts and opinions. The counselor was of the opinion that he has come to the point where he has now begun to make substantial progress. He is now able to function at home and in school. His foster parents have played a significant role in his improvement by providing strict boundaries, by being consistent, by providing a routine and providing loving care and attention. It is the opinion of I.K.'s counselor that he will always need mental health services. It is further her opinion that being reintroduced to his parents would be confusing and would likely result in regression in his behaviors.

{¶14} Evidence was presented that established that Appellant after her release from the halfway house did actually participate in the Case Plan and worked on Case Plan provisions. She successfully completed parent education at Ashland Parenting Plus. In addition, she completed numerous programs and classes while at the halfway house, including drug and alcohol services, an emotional healing group, co-dependency program, financial management program, employment readiness training, domestic violence program and a trauma program. She had been released from the halfway house only five months prior to the filing of the Permanent Custody Motion.

{¶15} Appellant has been cooperative with ACJFS since her release and has shown interest in the children. However, she has not taken any actions to attempt to remove the No Contact Order.

{¶16} The children's Guardian Ad Litem has thoroughly investigated these cases, participated in all proceedings in these cases and filed several detailed written reports with the Court.

{¶17} On December 29, 2017, the Court filed a Judgment Entry granting Children Services permanent custody of I.K. The trial court found that I.K. was in the custody of ACJFS for twelve or more months of a consecutive twenty-two month period. The Court further found that it was in the best interest of I.K. that the motion for permanent custody be granted.

*Assignment of Error*

{¶18} Appellant raises one assignment of error,

{¶19} "I. THE COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE AGENCY WHEN NOT HAVING CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE CHILD."

*Law and Analysis*

**Burden of Proof.**

{¶20} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶21} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and

convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

### *Standard of Review.*

{¶22} The Ohio Supreme Court has delineated our standard of review as follows,

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

{¶23} In *Cross*, the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the

impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

### *Requirements for Permanent Custody Awards.*

**{¶24}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶25}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one

or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶26} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

*A. Temporary Custody for at least 12 out of a consecutive 24 month period-R.C.*
*2151.414(B) (1) (d).g2*

**{¶27}** The "12 of 22" provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. *In re C.W.,* 104 Ohio St.3d 163, 2004–Ohio–6411, 818 N.E.2d 1176, ¶22. Through the "12 of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds. Id.

**{¶28}** "Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B) (1) (d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period." *In re: C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this time period, the Court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." Id. at 167, 2004-Ohio-6411, 818 N.E.2d at 1180, ¶26.

**{¶29}** R.C. 2151.414(B)(1)(e) states that, "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

**{¶30}** In the case at bar, I.K. was removed from the Appellant's home on April 4, 2016. Sixty day from April 4, 2016 would be June 3, 2016. The trial court adjudicated I.K. an abused and dependent child by Judgment Entry filed April 13, 2016. Accordingly, the "earlier date" that I.K. will be deemed to have enter the temporary custody of ACJFS for purposes of R.C. 2151.414(B) (1) (d) is April 13, 2016. ACJFS filed the Motion for Permanent custody on June 8, 2017, 1 year, 1 month and 26 days after I.K. is deemed to have entered the temporary custody of ACJFS.

**{¶31}** Accordingly, the trial court correctly found that I.K. had been in the temporary custody of the ACJFS for over twelve months. Appellant has not challenged this finding on appeal.

**{¶32}** If the court finds that R.C. 2151.414(B)(1)(d) applies, then it need not also find that the child cannot or should not be placed with either parent within a reasonable time. *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 21; *In re A.M.*1, 4th Dist. Athens Nos. 10CA21 through 10CA31, 2010-Ohio-5837, 2010 WL 4890433, ¶ 31; *In re J.R.*, 5th Dist. Stark No. 2016CA00018, 2016-Ohio-2703, ¶ 38 (citing *In re Calhoun,* 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458); *In re Williams*, 10th Dist. Franklin No. 02AP-924, 2002-Ohio-7205; *In re J.F.*, 8th Dist. Cuyahoga No. 105504, 2018-Ohio-96, 2018 WL 386668, ¶ 51; *In re K.W.,* 4th Dist. Highland No. 17CA7 & 17CA8, 2018-Ohio-1933, ¶63.

**{¶33}** As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No.2007 AP 0041, 2007–Ohio–5805. This finding alone, in conjunction with a best interest finding, is sufficient to

support the grant of permanent custody.  *In re Calhoun*, 5th Dist. Stark No.2008CA00118, 2008–Ohio–5458.

*Best Interest of the Child, R.C. 2151.414(D).*

**{¶34}**  In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶35}**  The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents.  *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist. 1994).  A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent.  The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

**{¶36}**  This Court has held that a trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision.  *In re: Turner*, 5th Dist. Tuscarawas No. 2006-CA045, 2006-Ohio-6793, ¶34; *In the Matter of the Franklin Children,* 5th Dist.

Tuscarawas No. 2001 AP 03 0023, 2001 WL 1772921(Jan. 28, 2001); *In Re: Parker,* 5th Dist. Tuscarawas No. 2000AP120096, 2000AP120097, 2001 WL 1782603(Apr. 25, 2001); *In the Matter of the Schupbach Children,* 5th Dist. Tuscarawas No. 2000AP010005, 2000 WL 964981(May 6, 2000). *See also*, *In re: Hershberger*, 3rd Dist. Allen Nos. 01-04-55, 01-04-61, 2005-Ohio-429; *In re Heyman*, 10th Dist. Franklin No. 96APF02-194, 1996 WL 465238 (Aug. 13, 1996). Nevertheless, there must be some indication on the record that all of the necessary factors were considered.

**{¶37}** In the case at bar, the trial court made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), *quoting In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

**{¶38}** As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1981 WL 6321 (Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).

**{¶39}** In the present case, the trial court's decision indicates it considered the best interest factors. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in I.K.'s best interest. The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to ACJFS. In the case at bar, in addition to the testimony, the trial court considered the reports of the GAL.

**{¶40}** The court found that I.K. has not seen Appellant since being removed from the home on April 4, 2016 and there is no present evidence of a bonded, loving relationship. The Court further found that I.K. has expressed an interest in being returned to Appellant's custody.

**{¶41}** The trial court further found H.K. and I.K. are in separate foster homes but do have a relationship with each other, are able to see each other on a regular basis and for the most part interact well. The evidence would indicate that this contact would likely continue.

**{¶42}** The Court found that both of the children have excellent bonded relationships with their respective foster parents and all persons in their foster homes. Each child feels loved, protected, and secure in its present environment; all of their needs are met; and each has made progress under the most difficult of circumstances. All interactions and interrelationships between the children and all persons in their' respective foster homes are positive and those relationships significantly improved the well-being of each of the children.

**{¶43}** Concerning Appellant, the Court found that although Appellant is not presently incarcerated, she does not have stable, i.e., suitable, housing for the children

and her living arrangements would not be in I.K.'s best interest. Further Appellant has not addressed her issues that contributed to the reasons these cases were filed in the first place and the children will continue to be at risk if they resided with her. In addition, both these children have numerous special needs. Those needs require specialized placements and specialized services, which neither parent had ever provided to the children. The evidence would indicate that neither is in a position to provide for those needs in the future.

{¶44} The evidence did demonstrate that Appellant successfully completed some aspect of her case plan. On that point, the evidence demonstrates that any improvement that Appellant has made in his life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that Appellant was not able to be a successful parent I.K.

{¶45} As already noted, Appellant failed to remedy the problems that initially caused the removal of the child from the home. Very little if anything, has changed with respect to Appellant's life choices since this case began. She does not understand the problems with her behavior, or her lifestyle. Appellant displays poor judgment and poor coping skills. Appellant has been unable to demonstrate any meaningful change in her lifestyle during the pendency of the case.

{¶46} In the case at bar, upon review of the record on appeal and the findings and conclusions of the trial court, we conclude the grant of permanent custody of I.K. to ACJFS was made in the consideration of the child's best interest and did not constitute an error or an abuse of discretion under the circumstances presented.

***Conclusion.***

**{¶47}** For these reasons, we find that the trial court's decision that permanent custody to ACJFS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶48}** Because the evidence in the record supports the trial court's judgment, we overrule Appellant's sole assignment of error, and affirm the decision of the Ashland County Court of Common Pleas, Juvenile Division.

**{¶49}** Appellant's sole assignment of error is overruled.

By Gwin, P, J.,

Delaney, J., and

Baldwin, J., concur